UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE SCRIPPS RESEARCH INSTITUTE,<br><br>Plaintiff,<br><br>v.<br><br>ILLUMINA, INC.,<br><br>Defendant. | Case No.: 16-cv-661 JLS (BGS)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>(ECF No. 22) |

Presently before the Court is Defendant Illumina, Inc.'s ("Illumina") Motion to Dismiss. ("MTD," ECF No. 22.) Also before the Court are Plaintiff The Scripps Research Institute's ("Scripps") response in opposition to, ("Opp'n," ECF No. 23), and Defendant's reply in support of, ("Reply," ECF No. 24), Defendant's Motion to Dismiss. The Court vacated the hearing set for July 14, 2016 and took the matter under submission pursuant to Civil Local Rule 7.1(d)(1). (ECF No. 25.) After considering the parties' arguments and the law, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion to Dismiss and **DISMISSES WITHOUT PREJUDICE** Plaintiff's Complaint.

/ / /

/ / /

/ / /

/ / /

# BACKGROUND

Plaintiff Scripps is a California non-profit engaged in medical research. (Complaint ("Compl.") ¶ 1, ECF No. 1.) Defendant Illumina is a genomics tool company that develops and markets, among other things, array-based systems and assays for genotyping, gene expression, and epigenetics. (*Id.* at ¶ 2.)

Plaintiff is the owner of U.S. Patent No. 6,060,596 (the "'596 patent") entitled "Encoded Combinatorial Chemical Libraries." (*Id.* at ¶¶ 10–11.) As described by Plaintiff, the '596 patent

> pertains to a "bifunctional molecule" used in the manufacture of DNA microarrays. DNA microarrays are used in the genetic analysis, cancer characterization, and diagnosis of many diseases. Each DNA substrate or bead in a microarray product contains hundreds of thousands of copies of specific DNA sequences, known variously as "probes," "oligonucleotides" or "oligos" for short. These probes can be a short section of a gene or other DNA element, and they can be used to detect a complimentary DNA or RNA sample, known as a "target probe" in an assay. Associated with each target probe in an "encoded probe" that identifies the specific sequence of the target probe. The target probe and the encoded probe are linked together to make up the bifunctional molecule.

(*Id.* at ¶ 8.)

Defendant provides the following further description of the '596 patent[1]:

> The '596 patent relates to creating a chemical library of "bifunctional molecules having both a chemical polymer and an identifier nucleotide sequence that defines the structure of the chemical polymer." (['596 patent], at Abstract.) The chemical polymer can be, for example, a series of amino acids (the building blocks of proteins), while the identifier is a series of the nucleic acid bases (e.g., adenosine (A), guanine (G), cytosine

---

[1] The Court reproduces this description of the '596 patent for background purposes only, and is aware that Plaintiff "disputes . . . many of the statements set forth in Illumina's alleged 'Statement of Facts.'" (Opp'n 3 n.1, ECF No. 23.) However, Plaintiff acknowledges that these disputes "are not addressed [in its opposition] because they are not necessary to resolve the instant issue." (*Id.*)

(C), and thymine (T)) that make up nucleic acids like DNA. (*See, e.g., id.* at 4:44-55, 5:55-65, 6:15-24.)

The patent states that its "bifunctional molecules" are built in a step-wise manner by starting with a linker, "B," and adding, one-by-one in an alternating fashion, a series of chemical units to one end, and a series of identifier nucleotide sequences to the other. (*See, e.g., id.* at 10:18-11:25.) For example, the patent shows the bifunctional molecule below, which is built by attaching the first chemical unit ($X_1$) to the linker, and then attaching a corresponding first unit identifier nucleotide sequence ($Z_1$), followed by attaching the second chemical unit ($X_2$), and then the second unit identifier sequence ($Z_2$), and so on, through four rounds of this step-wise addition:

$$X_4 X_3 X_2 X_1 \text{---} B \text{---} Z_1 Z_2 Z_3 Z_4.$$

(*Id.* at 5:66-6:6, 10:18-11:25.) In this way, each chemical unit has a corresponding unit identifier. The result is that you can determine the first chemical group's ($X_1$'s) structure simply by reading the first unit identifier ($Z_1$), determine the second chemical unit's ($X_2$'s) structure by reading the second unit identifier ($Z_2$), and do the same for each of the other chemical units by reading their corresponding identifier. (*Id.*; *see also id.* at 2:48-54, 3:12-18.)

The '596 patent uses several additional labels to describe the structure of its bifunctional molecule. It explains that the series of chemical units ($X_1$ through $X_4$) is collectively called "A," and the series of oligonucleotide sequences ($Z_1$ through $Z_4$) is called "C." (*Id.* at 4:31-38, 5:55-65.) So the structure reproduced above could be depicted by the shorthand A—B—C. (*Id.*) The patent identifies a particular chemical unit or corresponding unit identifier sequence using the parameter "n." (*Id.*) For example, n=1 for the chemical unit ($X_1$) and oligonucleotide identifier ($Z_1$) closest to the linker, while n=2 for the second chemical unit ($X_2$) and second oligonucleotide identifier ($Z_2$) added. The patent also defines the parameter "a" to mean the total number of chemical units or unit identifier nucleotide sequences. (*Id.* at 4:39-42, 5:63-65, 9:1-11, 28:1-29:2, 44:6-12.) In the figure above, a= 4, because there are 4 chemical units in polymer A that correspond to the 4 unit identifier sequences.

1

2  (MTD 6–7,[2] ECF No. 22-1.)

3       Plaintiff filed its Complaint against Defendant on March 17, 2016, alleging that

4  Defendant directly infringed—both literally and under the doctrine of equivalents—claims

5  1, 3, 10, and 16 of the '596 patent by making, using, selling, and offering for sale its

6  "BeadChip" and other microarray products in the United States.  (Compl. ¶ 12, ECF No.

7  1.)  Plaintiff further alleges that Defendant has induced infringement by third parties, (*id.*

8  at ¶ 13), and that Defendant's infringement was willful, (*id.* at ¶ 14).  Defendant filed the

9  instant Motion to Dismiss on May 20, 2016.  (ECF No. 22.)

10      The relevant factual allegations in the Complaint pertaining to Defendant's allegedly

11  infringing products include the following:

12          9.      For a number of years, Illumina has manufactured and
            marketed DNA microarray technologies and products, one

13          example being its "BeadChip products." Each bead on the
            BeadChip products is covered with hundreds of thousands of

14          copies of specific bifunctional molecules, a portion of which acts
            as a target probe in a given Illumina assay and a portion of which

15          acts as an encoded probe. The BeadChip and other Illumina
            microarray products are sold "decoded" which allows every

16          oligonucleotide sequence of the target probe on every bead to be
            identified. The bifunctional molecule used in the manufacture of

17          such Illumina products utilizes The Scripps Research Institute's
            patented technology.

18          . . .

19          12.     Illumina has directly infringed claims 1, 3, 10, and 16 of
            the '596 patent by manufacturing, using, selling, and offering for

20          sale BeadChip and, on information and belief, other microarray
            products in the United States during the term of the patent,

21          including BeadChips used in conjunction with the Infinium and
            Direct Hybrid assays. Illumina has infringed the '596 patent both

22          literally and under the doctrine of equivalents. The Scripps
            Research Institute contends that the oligos attached to Illumina's

23          BeadChip and other microarray products contain a bifunctional
            molecule as described by the claims of the '596 patent with a

24

25

26

27

28  _____
    [2] Pin citations refer to the CM/ECF numbers electronically stamped at the top of each page.

polymer A, an identifier oligonucleotide C, and a linker.

(Compl. ¶¶ 9, 12, ECF No. 1.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (alteration in original). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "[F]acts that are 'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, the Court need not accept as true "legal conclusions" contained in the complaint. *Id.* at 678–79 (citing *Twombly*, 550 U.S.

at 555). This review requires "context-specific" analysis involving the Court's "judicial experience and common sense." *Id.* at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). The Court will grant leave to amend unless it determines that no modified contention "consistent with the challenged pleading . . . [will] cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schriber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

In patent cases, purely procedural issues of law are governed by the law of the regional circuit. *K–Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1282 (Fed. Cir. 2013). In the Ninth Circuit, to be entitled to the presumption of truth, a complaint's allegations "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011), *cert. denied*, 132 S. Ct. 2101 (2012). Additionally, this Court has previously held that the pleading standards under *Twombly* and *Iqbal*—not Form 18—now govern claims for direct infringement of a patent. *Footbalance Sys. Inc. v. Zero Gravity Inside, Inc.* (*Footbalance II*), No. 15-CV-1058 JLS (DHB), 2016 WL 5786936, at *2–3 (S.D. Cal. Oct. 4, 2016).

## ANALYSIS

Defendant argues that Plaintiff (1) has not plausibly alleged direct infringement because it fails to state sufficient facts showing that Defendant's products directly infringe each limitation of the asserted claims; and (2) has not plausibly alleged inducement and (3) willful infringement because it has not shown that Defendant had knowledge of the '596 patent during the relevant period. The Court considers each argument in turn.

### I. Direct Infringement

To state a claim for direct patent infringement, a plaintiff must allege that the defendant, "without authority[,] makes, uses, offers to sell, or sells any patented invention." 35 U.S.C. § 271(a); *see also Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 773 (Fed. Cir. 1993)

(citing *Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1469 (Fed. Cir. 1990), *cert. denied*, 493 U.S. 1076 (1990)).  "To prove infringement, the patentee must show that an accused product embodies all limitations of the claim either literally or by the doctrine of equivalents." *Cephalon, Inc. v. Watson Pharms., Inc.*, 707 F.3d 1330, 1340 (Fed. Cir. 2013).  "To establish literal infringement, every limitation set forth in a claim must be found in the accused product, exactly." *Advanced Steel Recovery, LLC v. X-Body Equip., Inc.*, 808 F.3d 1313, 1319 (Fed. Cir. 2015) (citing *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995)).  "Under the doctrine of equivalents, 'a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention.'" *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 469 F.3d 1005, 1016 (Fed. Cir. 2006) (citing *Warner–Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 21 (1997)).  "Under the 'all elements' rule, 'the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole.'" *E-Pass Techs., Inc. v. 3Com Corp.*, 473 F.3d 1213, 1221 (Fed. Cir. 2007) (citing *Warner–Jenkinson*, 520 U.S. at 29).

Defendant argues that Plaintiff fails to state a claim for direct infringement because it does not plausibly allege that Defendant's products infringe every limitation of the asserted claims, which Defendant maintains is the applicable pleading standard after the abolition of Form 18.  (MTD 10–12, ECF No. 22-1.)  Specifically, Defendant argues that Plaintiff's Complaint fails to plausibly allege infringement as to at least two limitations of asserted claim 1 of the '596 patent.  (*Id.* at 12–13; Reply 6–7, ECF No. 24.)  In particular, Defendant argues that Plaintiff "does not attempt to show that Illumina's products meet the requirement that 'a unit identifier nucleotide sequence Z within oligonucleotide C identifies the chemical unit X at position n;' and the requirement that 'a is an integer from 4 to 50.'" (MTD 12–13, ECF No. 22-1.)  Defendant further argues that Plaintiff should be required to identify all of its asserted claims and all of Defendant's accused products at the pleading stage.  (*Id.* at 14.)

Plaintiff responds that a patentee is not required to plead direct infringement by alleging sufficient facts plausibly showing that a defendant's products infringe each limitation of the asserted claims. (Opp'n 3, ECF No. 23.) Instead, Plaintiff argues that the specificity desired by Defendant will come later, at least when Plaintiff serves its infringement contentions. (*Id.* at 5.) Thus, Plaintiff argues that its Complaint is sufficient because its "Complaint sets forth sufficient facts to raise a reasonable expectation that discovery will reveal evidence that Illumina's bifunctional molecules infringe the patent-in-suit." (*Id.* at 4.) Furthermore, Plaintiff argues that it should not be required to identify all of its asserted claims and all of Defendant's accused products at this stage because it will do so when it serves its infringement contentions. (*Id.* at 5–6.)

Representative asserted claim 1 of the '596 patent, with Defendant's emphasis on some of the limitations allegedly without support in Plaintiff's Complaint, is reproduced below:

> 1. A bifunctional molecule according to the formula A—B—C, wherein
> A is a polymer comprising a linear series of chemical units represented by the formula $(X_n)_a$, wherein X is a single chemical unit in polymer A,
> B is a linker molecule operatively linked to A and C, and identifier oligonucleotide C is represented by the formula $(Z_n)_a$,
> **wherein a unit identifier nucleotide sequence Z within oligonucleotide C identifies the chemical unit X at position n; and**
> wherein n is a position identifier for both X in polymer A and Z in oligonucleotide C having the value of 1+i where i is an integer from 0 to 10, such that when n is 1, X or Z is located most proximal to the linker, and
> **a is an integer from 4 to 50.**

(MTD 7, ECF No. 22-1 (citing '596 patent col. 43 ll. 2-14 (emphases added)).)

As an initial matter, the Court joins several other courts in holding that in order to properly plead direct infringement under *Twombly* and *Iqbal*, a plaintiff must plausibly

1  allege that a defendant directly infringes each limitation in at least one asserted claim.[3] *See*

2  *e.Digital Corp. v. iBaby Labs, Inc.*, No. 15-CV-05790-JST, 2016 WL 4427209, at *3 (N.D.

3  Cal. Aug. 22, 2016) (collecting authority). Indeed, under *Twombly* a plaintiff's complaint

4  must state a plausible claim for relief, and to "establish literal infringement, every

5  limitation set forth in a claim must be found" in the accused instrumentality. *Advanced*

6  *Steel Recovery*, 808 F.3d at 1319. Likewise, a claim for direct infringement under the

7  doctrine of equivalents "'must be applied to individual elements of the claim, not to the

8  invention as a whole.'" *E-Pass Techs.*, 473 F.3d at 1221 (citation omitted). It thus follows

9  that to adequately plead direct infringement, a plaintiff must allege sufficient facts to

10  plausibly show that a defendant's accused instrumentality contains each limitation of the

11  asserted patent claim.[4]

12      Importantly, the Court's holding does not require a patentee to plead with the

13  specificity required in its infringement contentions, which Plaintiff seems to suggest.

14  (Opp'n 5, ECF No. 23.) As Plaintiff explains, its infringement contentions "will provide

15  information concerning how each limitation of the asserted claims [*is*] met by the accused

16  products." (*Id.* (emphasis added).) Here, however, Plaintiff must simply provide sufficient

17  factual allegations concerning how each limitation of the asserted claims is *plausibly* met

18  by the accused products. *See e.Digital*, 2016 WL 4427209, at *4 ("To require a patentee

19  to plausibly allege that the accused product practices each of the limitations in at least one

20  asserted claim should not impose an undue burden on most plaintiffs, because a patentee

---

[3] To clarify, Plaintiff—and future patentees—should not read this holding as an invitation to assert and plausibly allege infringement of one claim, survive a motion to dismiss, and thereafter conduct discovery on other, unrelated claims. Such discovery would in many cases be barred by Federal Rule of Civil Procedure 26(b)(1) as not "relevant to any party's claim." Thus, while under *Twombly* a patentee need only plausibly allege direct infringement of one asserted claim for its *complaint* to survive a motion to dismiss, a patentee must plausibly allege direct infringement as to all asserted claims in its complaint in order for *those asserted claims* to likewise survive a motion to dismiss. Of course, a patentee may be able to amend its complaint at a later date to add additional claims for infringement, but those claims will also have to survive under *Twombly* if a challenge is raised.

[4] Thus, the Court finds that Plaintiff's reliance on *Phonometrics, Inc. v. Hospitality Franchise Sys., Inc.*, 203 F.3d 790 (Fed. Cir. 2000), is misplaced, since that case predates the abrogation of Form 18. *See e.Digital*, 2016 WL 4427209, at *4 (finding same).

is already required to perform an adequate pre-filing investigation before bringing suit.") (citation omitted); *see also TeleSign Corp. v. Twilio, Inc.*, No. CV 16-2106 PSG (SSX), 2016 WL 4703873, at *4 (C.D. Cal. Aug. 3, 2016) ("[I]t is irrelevant at this stage whether Plaintiff's allegations are accurate, as the Court accepts all of Plaintiff's allegations as true . . . . The Court only requires that Plaintiff plausibly alleges that a product or products of Defendant infringes on at least one claim of the [asserted] patent.").

Applying *Twombly*, Plaintiff's Complaint fails to state a claim for direct infringement.  Plaintiff's allegations related to Defendant's direct infringement appear in paragraphs 9 and 12 of its Complaint.  In paragraph 9, Plaintiff identifies one of Defendant's products and describes some of its characteristics.  (*See* Compl. ¶ 9, ECF No. 1 (identifying and describing Defendant's "BeadChip" product).)  For instance, Plaintiff generally avers that Defendant's BeadChip product contains "hundreds of thousands of copies of specific bifunctional molecules, a portion of which acts as a target probe in a given Illumina assay and a portion of which acts as an encoded probe."  (*Id.*)  Next, Plaintiff claims that "[t]he BeadChip and other Illumina microarray products are sold 'decoded' which allows every oligonucleotide sequence of the target probe on every bead to be identified."  (*Id.*)  From this, Plaintiff concludes that "[t]he bifunctional molecule used in the manufacture of such Illumina products utilizes The Scripps Research Institute's patented technology."  (*Id.*)

That may very well be the case, but Plaintiff does not explain how this description of Defendant's BeadChip product—particularly the general overview of the bifunctional molecules contained therein—plausibly meets the limitations of the bifunctional molecules in Plaintiff's asserted claims.  Indeed, as Defendant notes, the "'596 patent does not cover just any bifunctional molecule; its claims all require a bifunctional molecule with a specific structure."  (MTD 12, ECF No. 22-1.)  As discussed above, Defendant identifies several limitations in claim 1 that are not encompassed—much less addressed—by Plaintiff's allegations.  (*Id.* at 12–13.)  After an independent review of Plaintiff's allegations, the Court agrees.  *Cf. Asghari–Kamrani v. United Servs. Auto. Ass'n*, No. 2:15CV478, 2016

WL 1253533, at *4 (E.D. Va. Mar. 22, 2016) ("As discussed above, every one of the patent's claims contain limitations in addition to the use of a one-time code. Doing no more than identifying features of USAA's website that use a one-time use code does not describe with particularity how USAA's website infringes Plaintiffs' patent.").

Finally, in paragraph 12, Plaintiff "contends" that the oligos attached to Illumina's products contain a bifunctional molecule as described by the claims of the '596 patent. However, Plaintiff provides no factual support whatsoever for this contention.  (Compl. ¶ 12, ECF No. 1.)  This is the sort of conclusory allegation Rule 8 is designed to curtail, and thus Plaintiff's allegation fails to even satisfy the pleading standard proffered by Plaintiff, much less the pleading standard adopted by this—and other—courts after the abrogation of Form 18.   Accordingly, Plaintiff's direct infringement claims are **DISMISSED WITHOUT PREJUDICE**.

However, the Court rejects Defendant's arguments that Plaintiff must at this stage identify all asserted claims against Defendant and all of its allegedly infringing products.[5] (MTD 14, ECF No. 22-1.)  *See Atlas IP LLC v. Pac. Gas & Elec. Co.*, No. 15-CV-05469-EDL, 2016 WL 1719545, at *5 (N.D. Cal. Mar. 9, 2016) (rejecting defendant's argument that plaintiff should be required to plead all asserted claims because "*Iqbal* and *Twombly* only require Plaintiff to state a plausible claim for relief, which can be satisfied by adequately pleading infringement of one claim").  To the contrary, Plaintiff will have an opportunity to identify all of its asserted claims and Defendant's allegedly infringing

---

[5] In so holding, the Court agrees with Plaintiff's characterization of this Court's previous decision in *FootBalance Sys. Inc. v. Zero Gravity Inside, Inc. (Footbalance I)*, No. 15-CV-1058 JLS (DHB), 2016 WL 903681 (S.D. Cal. Feb. 8, 2016).  (Opp'n 5, ECF No. 23.)  In *Footbalance I*, the Court held that plaintiff's allegations of "custom insoles" and "insoles" were insufficient to put defendant on notice as to what products allegedly infringed plaintiff's patents because those generic allegations "encompass[ed] essentially [defendant's] entire business."  2016 WL 903681, at *4 (citation omitted).  Here, in contrast, Plaintiff has identified at least two of Defendant's allegedly infringing products—BeadChip products used in conjunction with Infium and Direct Hybrid microarrays.  This is sufficient at the pleading stage.  And, as discussed above, Plaintiff will be required to identify with specificity additional allegedly infringing products in its infringement contentions.

products in its infringement contentions pursuant to Patent Local Rule 3.1.[6]  Accordingly, the Court **DENIES** this portion of Defendant's Motion to Dismiss.

## II.   Induced Infringement

Plaintiff also alleges that Defendant "has induced infringement by third parties by causing third parties to use the infringing products."  (Compl. ¶ 13, ECF No. 1.)  To state a claim for inducement pursuant to 35 U.S.C. § 271(b), "the patentee must show, first that there has been direct infringement, and second that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *Kyocera Wireless Corp. v. Int'l Trade Comm'n*, 545 F.3d 1340, 1353–54 (Fed. Cir. 2008) (quoting *Minn. Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1304–05 (Fed. Cir. 2002)) (internal quotation marks omitted).

Because the Court has already concluded that Plaintiff has failed to state a claim for direct infringement, Plaintiff's claims for induced infringement must fail as well.[7] Accordingly, Plaintiff's inducement claims are **DISMISSED WITHOUT PREJUDICE**.

## III.   Willful Infringement

Section 284 allows courts to "increase the damages up to three times the amount found or assessed" in a patent claim.  35 U.S.C. § 284.  The Supreme Court recently issued its decision in *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1927 (2016), where it rejected the Federal Circuit's two-part test from *In re Seagate*, 497 F.3d 1360 (Fed. Cir. 2007), for determining when a district court may award enhanced damages.  The Court reaffirmed that § 284 commits the award of enhanced damages to the discretion of the district court.  *Halo*, 136 S. Ct. at 1933–34.  The Court explained that the *Seagate* test is "'unduly rigid'" and "'impermissibly encumbers'" a district court's discretion, particularly because it requires a finding of objective recklessness in every case before a district court

---

[6] Of course, as discussed in footnote 3, *supra*, all of a patentee's asserted claims for infringement must eventually appear in its complaint, amended or otherwise.

[7] Plaintiff's inducement claim additionally fails because it has not sufficiently alleged that Defendant had knowledge of the '596 patent during the relevant period.  The Court discusses Plaintiff's allegations regarding Defendant's knowledge of the '596 patent in Section III, *infra*.

16-cv-661 JLS (BGS)

may award enhanced damages. *Id.* at 1932 (citing *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1755 (2014).) Instead, the Court held that "[t]he subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless." *Id.* at 1933. Yet even after *Halo*, "[k]nowledge of the patent alleged to be willfully infringed continues to be a prerequisite to enhanced damages." *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016). The Court further noted that "Section 284 allows district courts to punish the full range of culpable behavior[,]" but "such punishment should generally be reserved for egregious cases typified by willful misconduct." *Halo*, 136 S. Ct. at 1933–34.

Plaintiff alleges that Defendant's infringement was willful based on the following:

> 14. On information and belief, Illumina had knowledge of the '596 patent during its term and knew that the manufacture, use, sale, and offer for sale of at least its BeadChip products infringed the '596 patent. Illumina previously licensed one or more patents from one of the inventors, Nobel Prize recipient Dr. Sydney Brenner, and Illumina would have been aware of other patents issued to Dr. Brenner before this suit was filed. Accordingly, Illumina's infringement of the '596 patent was both deliberate and willful.

(Compl. ¶ 14, ECF No. 1.)

The Court concludes that these allegations fail to state a claim for willful infringement because Plaintiff fails to plausibly allege that Defendant had knowledge of the '596 patent during the relevant period. In particular, Plaintiff's reliance on Defendant's previous licensing of Dr. Brenner's patents is insufficient to plausibly impute knowledge onto Defendant. Plaintiff does not identify which patents Defendant licensed from Dr. Brenner, nor does Plaintiff explain how those patents were related to the '596 patent itself or the underlying technology of the patent, which might otherwise tilt the scale from possible to plausible. This is especially problematic given that Dr. Brenner is a listed inventor on over 80 patents and several other patent applications. (*See* MTD 15, ECF No. 22-1; Reply 9, ECF No. 24.) Without more, the Court cannot agree with Plaintiff that

Defendant "would have been aware of other patents issued to Dr. Brenner before the suit was filed." (Compl. ¶ 14, ECF No. 1.) Accordingly, Plaintiff's claim for willful infringement is **DISMISSED WITHOUT PREJUDICE**.

## CONCLUSION

Based on the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion to Dismiss. Plaintiff is not required to identify all of its asserted claims or Defendant's allegedly infringing products at the pleading stage, but Plaintiff's claims are otherwise **DISMISSED WITH LEAVE TO AMEND**. Plaintiff **SHALL FILE** an amended complaint, if any, on or before December 12, 2016.

**IT IS SO ORDERED.**

Dated:  November 21, 2016

Hon. Janis L. Sammartino
United States District Judge

16-cv-661 JLS (BGS)