UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE SCRIPPS RESEARCH INSTITUTE,<br><br>Plaintiff,<br><br>v.<br><br>ILLUMINA, INC.,<br><br>Defendant. | Case No.: 16-cv-661 JLS (BGS)<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**<br><br>(ECF No. 30) |

Presently before the Court is Defendant Illumina, Inc.'s ("Illumina") Motion to Dismiss. ("MTD," ECF No. 30.) Also before the Court are Plaintiff The Scripps Research Institute's ("Scripps") response in opposition to, ("Opp'n," ECF No. 31), and Defendant's reply in support of, ("Reply," ECF No. 33), Defendant's MTD. The Court vacated the hearing on the MTD and took it under submission pursuant to Civil Local Rule 7.1(d)(1). (ECF No. 32.) After considering the parties' arguments and the law, the Court **DENIES** Defendant's Motion to Dismiss.

/ / /

/ / /

/ / /

/ / /

/ / /

# BACKGROUND

Plaintiff Scripps is a California non-profit engaged in medical research. (First Am. Compl. ("FAC") ¶ 1, ECF No. 27.) Defendant Illumina is a genomics tool company that develops and markets, among other things, array-based systems and assays for genotyping, gene expression, and epigenetics. (*Id.* ¶ 2.)

Plaintiff is the owner of U.S. Patent No. 6,060,596 (the "'596 patent") entitled "Encoded Combinatorial Chemical Libraries." (*Id.* ¶¶ 10–11.) As described by Plaintiff, the '596 patent

> pertains to a "bifunctional molecule" used in the manufacture of DNA microarrays. DNA microarrays are used in the genetic analysis, cancer characterization, and diagnosis of many diseases. Each DNA substrate or bead in a microarray product contains hundreds of thousands of copies of specific DNA sequences, known variously as "probes," "oligonucleotides" or "oligos" for short. These probes can be a short section of a gene or other DNA element, and they can be used to detect a complimentary DNA or RNA sample, known as a "target probe" in an assay. Associated with each target probe is an "encoded probe" that identifies the specific sequence of the target probe. The target probe and the encoded probe are linked together to make up the bifunctional molecule.

(*Id.* ¶ 8.)

Representative asserted claim 1 of the '596 patent is reproduced below:

> 1. A bifunctional molecule according to the formula A—B—C, wherein
> A is a polymer comprising a linear series of chemical units represented by the formula $(X_n)_a$, wherein X is a single chemical unit in polymer A,
> B is a linker molecule operatively linked to A and C, and
> identifier oligonucleotide C is represented by the formula $(Z_n)_a$,
>> wherein a unit identifier nucleotide sequence Z within oligonucleotide C identifies the chemical unit X at position n; and
>> wherein n is a position identifier for both X in polymer A and Z in oligonucleotide C having the value of 1+i where

2

> i is an integer from 0 to 10, such that when n is 1, X or Z
> is located most proximal to the linker, and
> **a is an integer from 4 to 50**.

'596 patent, at 43:2–14 (emphasis relevant to the present motion added).

Plaintiff filed its Complaint against Defendant on March 17, 2016, which the Court dismissed because it failed to plausibly allege that Defendant's product infringed each element of at least one claim. (*See* First MTD Order, ECF No. 26.) Plaintiff filed its FAC on December 12, 2016, again asserting that Defendant has infringed one or more claims of the '596 patent. (ECF No. 27.) Defendant moved to dismiss Plaintiff's FAC on January 17, 2017, arguing that Plaintiff has not pled a plausible claim of infringement. (*See generally* MTD, ECF No. 30-1.)

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), courts must dismiss complaints that "fail[] to state a claim upon which relief can be granted." The Court evaluates whether a complaint supports a cognizable legal theory and states sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." In patent cases, courts previously looked to Federal Rule of Civil Procedure 84, which in turn referred to "forms in the Appendix." *See Rembrandt Patent Innovations LLC v. Apple Inc.*, Nos. C 14-05094 (WHA), C 14-05093 WHA, 2015 WL 8607390, at *2 (N.D. Cal. Dec. 13, 2015); *In re Bill of Lading*, 681 F.3d 1323, 1334 (Fed. Cir. 2012) ("[T]o the extent the parties argue that *Twombly* and its progeny conflict with the Forms and create differing pleadings requirements, the Forms control."). One form in the Appendix was Form 18, an example complaint for patent infringement that "merely included an allegation that the defendant infringed the asserted patent by making, using, or selling 'electric motors' without specifying the model of the accused motors." *Rembrandt Patent*, 2015 WL 8607390, at *2. The 2015 Amendments to the Federal Rules, which the Supreme Court submitted to Congress in April 2015 pursuant to 28 U.S.C. § 2072, abrogated Rule 84, with the notation

that it was "no longer necessary." *See* Fed. R. Civ. P. 84 advisory committee's note to 2015 amendment; *RAH Color Techs. LLC v. Ricoh USA Inc.*, 194 F. Supp. 3d 346, 348–50 (E.D. Pa. 2016). The 2015 Amendments took effect December 1, 2015. *See* Fed. R. Civ. P. 84; *RAH Color Techs.*, 194 F. Supp. 3d at 349.

The abrogation of Rule 84 means that the Rule 8 pleading standards as construed by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) govern in patent cases. *See, e.g.*, *Rembrandt Patent*, 2015 WL 8607390, at *2; *Rah Color Techs.*, 194 F. Supp. 3d at 350 ("Following the reasoning of *In re Bill of Lading*, it appears the Federal Rules' amendment abrogating both Rule 84 and the Appendix of Forms means that claims of direct infringement are now also subject to the *Twombly/Iqbal* pleading standard.").

Although Rule 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (alteration in original). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "[F]acts that are 'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, the Court need not

4

16-cv-661 JLS (BGS)

accept as true "legal conclusions" contained in the complaint. *Id.* at 678–79 (citing *Twombly*, 550 U.S. at 555). This review requires "context-specific" analysis involving the Court's "judicial experience and common sense." *Id.* at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

In patent cases, purely procedural issues of law are governed by the law of the regional circuit. *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1282 (Fed. Cir. 2013). In the Ninth Circuit, to be entitled to the presumption of truth, a complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011), *cert. denied*, 132 S. Ct. 2101 (2012). The Court will grant leave to amend unless it determines that no modified contention "consistent with the challenged pleading . . . [will] cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schriber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

## ANALYSIS

Defendant argues that Plaintiff has not plausibly alleged direct infringement because (1) Plaintiff's FAC rests on an implausible interpretation of the parameter "a" as used in the patent, and (2) under the correct interpretation of parameter "a," Plaintiff fails to plausibly plead infringement. (*See generally* MTD, ECF No. 30-1.) Notably, Defendant does not argue that Plaintiff fails to state a claim for direct infringement under its own construction of parameter "a." (*See* FAC ¶¶ 14–15, ECF No. 27 (noting that the patent generally defines parameter "a" as the *length* of polymer A or oligonucleotide C).) Accordingly, the Court considers each of Defendant's arguments in turn.

To state a claim for direct patent infringement, a plaintiff must allege that the defendant, "without authority[,] makes, uses, offers to sell, or sells any patented invention." 35 U.S.C. § 271(a); *see also Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 773 (Fed. Cir. 1993)

(citing *Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1469 (Fed. Cir. 1990), *cert. denied*, 493 U.S. 1076 (1990)). "To prove infringement, the patentee must show that an accused product embodies all limitations of the claim either literally or by the doctrine of equivalents." *Cephalon, Inc. v. Watson Pharms., Inc.*, 707 F.3d 1330, 1340 (Fed. Cir. 2013). "To establish literal infringement, every limitation set forth in a claim must be found in the accused product, exactly." *Advanced Steel Recovery, LLC v. X-Body Equip., Inc.*, 808 F.3d 1313, 1319 (Fed. Cir. 2015) (citing *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995)). "Under the doctrine of equivalents, 'a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention.'" *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 469 F.3d 1005, 1016 (Fed. Cir. 2006) (citing *Warner–Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 21 (1997)). "Under the 'all elements' rule, 'the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole.'" *E-Pass Techs., Inc. v. 3Com Corp.*, 473 F.3d 1213, 1221 (Fed. Cir. 2007) (citing *Warner–Jenkinson*, 520 U.S. at 29). Thus, "in order to properly plead direct infringement under *Twombly* and *Iqbal*, a plaintiff must plausibly allege that a defendant directly infringes each limitation in at least one asserted claim." *Scripps Research Inst. v. Illumina, Inc.*, No. 16-CV-661 JLS (BGS), 2016 WL 6834024, at *5 (S.D. Cal. Nov. 21, 2016).

As a threshold matter, Plaintiff argues that Defendant's motion to dismiss is premature because it is based entirely on a claim construction argument. (Opp'n 7,[1] ECF No. 31.) Plaintiff opposes Defendant's construction in its pleadings, sets forth its own construction of parameter "a," and thereafter pleads how Defendant's products infringe the asserted claims of the '596 patent under its view of the claims. (*Id.* (citing, e.g., FAC ¶¶ 15–

---

[1] Pin citations to docketed material refer to the CM/ECF numbers electronically stamped at the top of each page.

17, 20, ECF No. 27).) Thus, Plaintiff argues that claim construction will be required, and urges the Court to postpone consideration of Defendant's arguments until claim construction. (*Id.*)

The Court partially agrees with Plaintiff. Claim construction at the pleading stage may be inappropriate where, for instance, the meaning of a claim term is unclear from the intrinsic evidence, or more generally where the Court finds that it would benefit from additional briefing and evidence presented at the claim construction phrase. *Cf. Palomar Techs., Inc. v. Mrsi Sys., LLC*, No. 15-CV-1484 JLS (KSC), 2016 WL 4496838, at *5 (S.D. Cal. Mar. 11, 2016) (concluding, in the context of a Section 101 analysis, that "'claim construction will aid the Court's Section 101 analysis in a number of respects'" (quoting *Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*, No. 15-CV-02177-SI, 2016 WL 283478, at *3 (N.D. Cal. Jan. 25, 2016))).

But the Court concludes that it may properly construe a claim term at the pleading stage in certain circumstances. The purpose of a 12(b)(6) motion is, after all, to determine whether a plaintiff states a legally cognizable claim for relief. And as one court recently explained:

> Claim construction "may be based on underlying findings of fact" (*Wi–Lan*, 811 F.3d at 461), but as recently reiterated by *Trs. of Columbia Univ.*, 811 F.3d at 1362, "[c]laim construction is ultimately a question of law," and determinations grounded solely on the claim language, the specification and the prosecution history (as opposed to the extrinsic record) are purely legal in nature. Atlas is therefore entirely incorrect in stating that claim construction cannot be engaged in at all at the motion to dismiss stage, at least when it is based on facts alleged in or reasonably inferable from the complaint.

*Atlas IP, LLC v. Exelon Corp.*, 189 F. Supp. 3d 768, 774 (N.D. Ill. 2016); *see also id.* at 778 (dismissing complaint where the plaintiff's action depended "on a claim construction that is wrong as a matter of law"). Thus, claim construction at the pleading stage may be appropriate, at the very least, where the Court can construe a claim term "based on the

claim language, the specification, and the prosecution history."[2] *Trs. of Columbia Univ. in City of N.Y. v. Symantec Corp.*, 811 F.3d 1359, 1362 (Fed. Cir. 2016). Because such constructions would be "legal determinations," *id.*, these constructions could be case dispositive at the outset, determining whether a plaintiff can legally state a claim for relief before the parties engage in expensive and ultimately unnecessary discovery. *See Twombly*, 550 U.S. at 560 (discussing the importance of pleading a plausible claim for relief as a safeguard against expensive and abusive discovery practices); *see also Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1930 (2015) ("Some companies may use patents as a sword to go after defendants for money, even when their claims are frivolous. . . . [I]t is still necessary and proper to stress that district courts have the authority and responsibility to ensure frivolous cases are dissuaded.").

Here, Defendant's argument is premised on what is perhaps one of the most appropriate exercises of claim construction at the pleading stage: a claim of lexicography; that is, that the '596 patent itself allegedly provides an explicit definition of parameter "a." If true, the patent's definition would control, Plaintiff's infringement theory based on another construction would be erroneous, and reliance on extrinsic evidence would be inappropriate. *See, e.g.*, *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996) ("In most situations, an analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term. In such circumstances, it is improper to rely on extrinsic evidence."). Accordingly, the Court considers Defendant's proposed construction of parameter "a" in order to determine whether Plaintiff has pled a plausible claim of direct infringement.

/ / /

---

[2] Of course, this is in no way an invitation for either party to contest the meaning of various terms at the pleading stage as an end-run around the typical claim construction phase of the case. Courts should be wary of this strategy, and thus limit claim construction at the pleading stage to those terms that would truly be case dispositive. And, as discussed, courts should decline to conduct early claim construction if they find that they would benefit from further briefing or evidence at the usual claim construction phase of the case, regardless of whether any party argues that further briefing would be unnecessary.

8

16-cv-661 JLS (BGS)

Words of a claim are "generally given their ordinary and customary meaning." *Id.* at 1582. But when a patentee "chooses to be his own lexicographer and use terms in a manner other than their ordinary meaning," the court can use the patentee's meaning "as long as the special definition of the term is clearly stated in the patent specification or file history." *Id.* at 1582. The Federal Circuit has explained that "[t]he standards for finding lexicography and disavowal are exacting. To act as its own lexicographer, a patentee must 'clearly set forth a definition of the disputed claim term,' and 'clearly express an intent to define the term.'" *GE Lighting Sols., LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fed. Cir. 2014).

In examining the claims themselves, "the context in which a term is used can be highly instructive." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005). Moreover, "[o]ther claims of the patent in question, both asserted and unasserted can . . . be valuable sources of enlightenment as to the meaning of a claim term." *Id.* (citing *Vitronics*, 90 F.3d at 1582). "Because claim terms are normally used consistently throughout the patent, the usage of a term in one claim can often illuminate the meaning of the same term in other claims." *Id.* Conversely, under the doctrine of claim differentiation, "'different words or phrases used in separate claims are presumed to indicate that the claims have different meanings and scope.'" *Andersen Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1369 (Fed. Cir. 2007) (quoting *Karlin Tech., Inc. v. Surgical Dynamics, Inc.*, 177 F.3d 968, 971–72 (Fed. Cir. 1999)).

Patent claims should ordinarily be construed to encompass the preferred embodiments described in the specification, for "[a] claim construction that excludes a preferred embodiment . . . 'is rarely, if ever, correct.'" *SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1285 (Fed. Cir. 2005) (quoting *Vitronics*, 90 F.3d at 1583). However, a court should not import limitations from the specification into the claims, *Phillips*, 415 F.3d at 1323 ("[A]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments."), absent a specific reference in the claims themselves, *Reinshaw PLC v.*

*Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998) ("[A] party wishing to use statements in the written description to confine or otherwise affect a patent's scope must, at the very least, point to a term or terms in the claim with which to draw in those statements.").

The parties' dispute centers on the meaning of parameter "a" as used in several equations in the claimed invention. *See, e.g.*, '596 patent, claim 1 (claiming a bifunctional molecule with a polymer A represented by the formula $(X_n)_a$); *id.* (claiming a bifunctional molecule with an identifier oligonucleotide C represented by the formula $(Z_n)_a$). Defendant argues that the "patent expressly defines the parameter 'a' to be the number of chemical units (X) in polymer A and the number of corresponding unit identifiers (Z) in oligonucleotide C that are in the bifunctional molecule." (MTD 14–15, ECF No. 30-1.) Plaintiff responds that parameter "a" is not necessarily limited to the total number of chemical units—though it can be; rather, parameter "a" generally refers to the *length* of polymer A and oligonucleotide C. (Opp'n 11–16, ECF No. 31.)

The Court finds that there is merit to both parties' arguments and thus the Court cannot say at this stage that Defendant's construction is correct as a matter of law. As to polymer A, both parties agree that the specification defines parameter "a" as "the length of the polymer." '596 patent, at 4:39–40. And, as claimed, parameter "a" is simply measured as "an integer from 4 to 50." *E.g.*, *id.* at 43:13–14.

But Defendant further argues that "a" must be the number of chemical units because, according to the specification, in the formula $V^a$, "'a' is an exponent to V and represents <u>the number of chemical units</u> of X forming the polymer A, <u>i.e., the length of polymer A</u>." *Id.* at 9:7–11 (emphasis added); (*see also* MTD 15, ECF No. 30-1). The Court disagrees. While this passage illustrates that parameter "a" *can be* defined by the number of chemical units, it does not specify that it *must be* so defined. Specifically the phrasing of the passage suggests that "a" is defined as the number of chemical units which *in this formula*—not categorically—connotes the length of polymer A. The Court's conclusion might be different if the passage instead read, for instance, that "'a' is an exponent to V and

represents the length of polymer A, i.e., the number of chemical units of X forming the polymer A." Defendant's other citations to the specification also illustrate that parameter "a" can be defined by chemical unit length, not that it must be. (*See* MTD 15, ECF No. 30-1 (citing, e.g., Fig. 2 and accompanying description).) Because, at this juncture, the Court does not find that these citations expressly define parameter "a," the Court will not import these limitations from the specification into the claim language. *See Phillips*, 415 F.3d at 1323 ("[A]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments.").

Furthermore, dependent claim 11 specifically claims that, in the formula $V^a$, "a is an exponent to V and represents the number of chemical units of X forming polymer A." '596 patent, at 44:10–12. Claim 11 depends on claim 10, which itself depends on claim 1, *see id.* at 44:4–5 ("A library comprising a plurality of species of bifunctional molecules according to claim 1."). Thus, parameter "a" in claim 11, the dependent claim, represents "the number of chemical units of X forming polymer A," whereas parameter "a" in claim 1, the independent claim, only requires "an integer from 4 to 50." The doctrine of claim differentiation operates as a presumption that if a dependent claim has a particular limitation, its independent claim does not. *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004) ("As this court has frequently stated, the presence of a dependent claim that adds a particular limitation raises a presumption that the limitation in question is not found in the independent claim."). "Although that presumption can be overcome if the circumstances suggest a different explanation, or if the evidence favoring a different claim construction is strong," *id.*, here the Court finds that, at this juncture, Defendant fails to rebut the presumption.

In sum, while the specification does contemplate that parameter "a" can represent the number of chemical units in polymer A, the patent also generally defines parameter "a" as the length of polymer A, only strictly requires that parameter "a" is "an integer from 4 to 50," and contains Defendant's definition of parameter "a" in a claim dependent on a

claim without that definition. Given this ambiguity, and based solely on the evidence thus far presented, the Court cannot at this point say that Defendant's definition of parameter "a" is as a matter of law the correct construction. *See GE Lighting*, 750 F.3d at 1309 (noting that "[t]he standards for finding lexicography and disavowal are exacting. To act as its own lexicographer, a patentee must 'clearly set forth a definition of the disputed claim term,' and 'clearly express an intent to define the term'").

Defendant's argument as to parameter "a" with regard to oligonucleotide C fares no better. Specifically, Defendant argues that the specification plainly states that, regarding the formula including oligonucleotide C, "<u>a</u> is an integer as described previously to <u>connote the number of chemical unit identifiers</u> in the oligonucleotide." (MTD 15, ECF No. 30-1 (citing '596 patent, at 5:59–65 (emphasis added by Defendant)).) However, as just discussed, other citations to the specification illustrate that the length of parameter "a" can be, not that it must be, measured by the number of chemical units; this statement would more forcefully support Defendant's point if it appeared without the phrase "as described previously." Without more, this arguable definition of parameter "a" is undercut by the reference to parameter "a" as previously described. *See, e.g.*, *Blast Motion, Inc. v. Zepp Labs, Inc.*, No. 15-CV-700 JLS (NLS), 2017 WL 476428, at *11 (S.D. Cal. Feb. 6, 2017) ("And even if the Applicant explicitly intended to define avatar in this statement, that definition is made ambiguous by the citation to the Merriam-Webster Dictionary definition, which further requires that the image 'is manipulated by the user.' Defendant's definitional argument fails for the same reason (that is, the dictionary definition is undercut by Plaintiff's description of the term without a user's manipulation). Given this ambiguity, the Court cannot say that the Applicant clearly defined 'avatar' in the cited passages of the prosecution history.").

/ / /

/ / /

/ / /

/ / /

In sum, at this juncture, the Court declines to hold that Defendant's construction of parameter "a" is based on a definition in the '596 patent that is clearly set forth, thus rendering it the correct construction as a matter of law.[3] Accordingly, the Court finds that Plaintiff's construction of parameter "a" is, at this pleading stage, a plausible construction based on the intrinsic evidence and argument thus far presented. Both parties will, of course, have another opportunity to contest the meaning of parameter "a"—if they so desire—at the claim construction phase.[4]

## CONCLUSION

As discussed above, Defendant does not appear to contest the sufficiency of Plaintiff's allegations assuming the Court were to credit the plausibility of Plaintiff's construction of parameter "a." (*See generally* MTD, ECF No. 30-1; *see also* Reply 14, ECF No. 33 ("What's more, Scripp's infringement case fails if either part of Illumina's construction is adopted . . . ." (emphasis removed)).) And Plaintiff's FAC sets forth how the accused products allegedly meet each element of the asserted claims under its theory of infringement. (*See* FAC ¶¶ 20–23, ECF No. 27.) Thus, having found that Plaintiff's construction of parameter "a" is plausible, the Court **DENIES** Defendant's MTD.

**IT IS SO ORDERED.**

Dated: April 14, 2017

Hon. Janis L. Sammartino
United States District Judge

---

[3] For this reason the Court need not reach Defendant's alternative argument that Plaintiff's claim for literal infringement based on the doctrine of equivalents is barred. (MTD 18–19, ECF No. 30-1.)

[4] And at that juncture the Court will adopt Defendant's, Plaintiff's, or another appropriate construction of parameter "a."

13

16-cv-661 JLS (BGS)